**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Beverly Golin, | No. CV-20-08192-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Beverly Golin's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 14, Def. Br.), and Plaintiff's Reply (Doc. 15, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 16–29) as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on November 28, 2016 for a period of disability beginning on October 28, 2016. (R. at 16.) Her claim was denied initially on April 7, 2017, and upon reconsideration on July 19, 2017. (R. at 16.) On August 8, 2019, Plaintiff appeared before the ALJ for a hearing regarding her claim. (R. at 16.) On September 4, 2019, the ALJ denied Plaintiff's claim (R. at 16–29), and on July 2,

2020, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of multiple sclerosis and fibromyalgia. (R. at 19.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 29.) In so doing, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 21.) The ALJ found that Plaintiff has the Residual Functional Capacity (RFC) to perform light work with some physical and environmental limitations. (R. at 22.) Accordingly, the ALJ found that Plaintiff can perform her past relevant work as a library assistant. (R. at 27.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.   ANALYSIS**

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ failed to give specific and legitimate reasons to reject the opinion of examining physician Dr. Stephen Gill (Pl. Br. at 15–17), and (2) the ALJ erred in his analysis of Plaintiff's symptom testimony (Pl. Br. at 8–15). Plaintiff also contends that this matter should be remanded for a computation of benefits. (Pl. Br. at 17–19.) The Court resolves these arguments in turn.

**A.   The ALJ gave specific and legitimate reasons to reject Dr. Gill's opinion.**

In the ALJ's weighing of the medical evidence, Plaintiff contests only the ALJ's assessment of the opinion of Dr. Stephen Gill, a licensed psychologist who apparently

evaluated Plaintiff on March 15, 2017, although the evaluation report in the record is unsigned and undated.[1] (R. at 434–41.) Dr. Gill ultimately opined that (1) Plaintiff "could understand and remember simple instructions but would likely have significant limitations understanding and remembering detailed instructions in the workplace"; (2) "would likely have significant limitations carrying out detailed instructions, maintaining attending [sic] and concentration over time, and overall completing a normal workweek without experiencing depressive symptoms"; (3) "would likely have significant limitations interacting with the general public and with peers and supervisors in a work setting" and (4) "would likely experience difficulty responding to changes in the work setting and shifting from task to task in a work environment in consideration of her depression and agitation." (R. at 439–40.) Plaintiff argues that the ALJ provided inadequate reasons to give little weight to Dr. Gill's assessment.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ may only reject a treating or examining physician's contradicted medical opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence

---

[1] As Defendant points out in its Response Brief (Def. Br. at 10), Plaintiff does not contest that the ALJ did not identify Plaintiff's alleged mental impairments such as depression as severe—or significantly limiting her physical or mental ability to do basic work activities, 20 C.F.R. § 404-1522(a). The Court agrees with Defendant that the ALJ thus was not required to adopt mental limitations in his formulation of Plaintiff's RFC. For the sake of completeness, the Court nonetheless discusses Plaintiff's arguments with regard to her mental limitations as they arise in conjunction with her severe impairments, namely, multiple sclerosis and fibromyalgia.

means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

In his examination of Plaintiff, Dr. Gill observed that she "does present with signs of depression and agitation" resulting from her self-described medical conditions of obesity, multiple sclerosis, and a brain tumor—fibromyalgia was not yet reported—but that she had sought no outpatient (or inpatient) mental health treatment as of his examination in March 2017. (R. at 434, 438.) The ALJ first discounted Dr. Gill's functional assessment of Plaintiff resulting from any psychological symptoms arising from her underlying physical conditions because the assessment was based on Plaintiff's subjective complaints rather than objective clinical findings. (R. at 20.) As support, the ALJ noted that Dr. Gill concluded Plaintiff would have limitations interacting with the general public and with peers and supervisors in a work setting based only on Plaintiff's subjective report that she "avoids social contacts outside the family," but the record shows Plaintiff has close relationships with family and attends church services. (R. at 20.) Moreover, so far as Dr. Gill's assessment was based on Plaintiff's subjective reports of depression due to her medical conditions, the ALJ noted that the record contains no report of inpatient psychiatric care and no report of outpatient psychiatric care until May 2019—two and a half years after the alleged onset date—when Plaintiff sought medication management. (R. at 20, 434.)

In terms of the other three functional areas of assessment—namely (1) understanding, remembering, or applying information, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself—the ALJ pointed to specific evidence in the record contradicting Plaintiff's subjective reports and Dr. Gill's reliance thereon, including that Plaintiff "is able to perform routine activities independently, such as caring for herself, preparing simple meals, performing some household chores, doing puzzles, spending time online, occasionally attending church, and managing finances." (R. at 20.) The ALJ also noted that, as an objective measure, Plaintiff "scored 29/30 on Folstein mental status exam." (R. at 20.) The Court finds the ALJ gave sufficient specific and legitimate reasons to discount Dr. Gill's psychological assessment of Plaintiff. *See*

*Tommasetti*, 533 F.3d at 1041. Plaintiff does not contest the ALJ's weighing of other medical evidence in the record, so the Court will now consider the ALJ's assessment of Plaintiff's symptom testimony.

### B. The ALJ erred in assessing Plaintiff's symptom testimony.

At the hearing before the ALJ, Plaintiff testified to various functional limitations due to her physical impairments of multiple sclerosis and fibromyalgia—most notably pain, weakness, and extreme fatigue. (R. at 53–91.) The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 22.) Specifically, the ALJ rejected Plaintiff's symptom testimony because (1) the objective medical findings illustrate Plaintiff's limitations are not debilitating, (2) the course of treatment does not corroborate Plaintiff's allegations of disabling symptoms and limitations, and (3) Plaintiff's description of her daily activities is not consistent with her complaints of disabling symptoms and limitations. (R. at 22–27.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

"In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the ALJ may properly consider that the medical record lacks evidence to support certain

symptom testimony. *Id.* at 681. Additionally, if the ALJ rejects a Plaintiff's symptom testimony for a single permissible purpose, then the ALJ's errant rejection of the testimony for other additional reasons is harmless. *See Carmickle*, 533 F.3d at 1162.

The ALJ's reasons for rejecting Plaintiff's testimony are sufficient insofar as they address certain of Plaintiff's complaints. For example, the ALJ found that Plaintiff's ability to walk was not severely limited because she exhibited "normal tandem gait, station, and coordination" in physical examinations and medical professionals opined that she could walk without the assistance of trekking poles or a cane. (R. at 23–24.) Likewise, the ALJ found that Plaintiff's daily activities—including caring for personal hygiene, taking medication, preparing simple meals, doing laundry, occasionally driving a vehicle, and paying bills—were inconsistent with an RFC limited to sedentary work and indicated instead an ability to do light work. (R. at 24–25.)

But, as Plaintiff points out in her Opening Brief (*e.g.*, Pl. Br. at 12–13), none of the ALJ's proffered reasons to discount Plaintiff's symptom testimony apply to Plaintiff's reports of extreme fatigue, nor does the medical record refute those reports. At the hearing, Plaintiff reported that fatigue and pain made it "very difficult to keep up with the work" at her most recent job in accounts receivable job at Yavapai Plumbing and that ultimately she could only work between 15 and 20 hours a week, missing the entire last month due to extreme fatigue. (R. at 60, 64, 79.) She also testified that fatigue keeps her from caring for the family's pets, including walking the dog. (R. at 71.) Plaintiff reported that Baclofen, which she takes to try to control the symptoms of multiple sclerosis, causes extreme fatigue. (R. at 70.)

Indeed, in the Court's review of the medical record, Plaintiff reported debilitating or chronic fatigue in every medical examination cited by the ALJ. (R. at 394–95, 417–18, 496–98, 544, 566, 578, 688, 861, 989.) For example, in her initial Occupational Therapy assessment, Plaintiff reported that she was limited by fatigue in performing all activities of daily living. (R. at 688.) Plaintiff also reported throughout her February 2017 Function Report that fatigue renders her incapable of many activities. (R. at 263–71.)

The ALJ stated that Plaintiff's allegations of disabling symptoms and limitations were inconsistent with the medical record, but the ALJ provides no support for that conclusion with regard to extreme fatigue, nor does the Court find any in the record. Likewise, Plaintiff's course of treatment does not indicate that her chronic fatigue is not severe; indeed, every examination refers to her fatigue. And Plaintiff's reports of daily activities are not inconsistent with her chronic fatigue either, as those activities are of short duration, and Plaintiff often expressed that fatigue limited even the short duration activities. (*E.g.*, R. at 265 (Plaintiff reported having to "sit to dress" and "shower quickly" due to "no energy").)

By failing to provide specific, clear and convincing reasons to discount Plaintiff's reports of extreme fatigue, the ALJ erred in evaluating Plaintiff's symptom testimony. Moreover, as stated above, the Court finds no support in the record to refute Plaintiff's reports of debilitating fatigue.

**C.     The credit-as-true rule applies.**

Having determined that the ALJ erred in rejecting some of Plaintiff's symptom testimony, the Court now turns to Plaintiff's argument that the proper remedy is to remand for payment of benefits. Generally, remand for further administrative proceedings is the appropriate remedy if enhancement of the record would be useful. *Garrison*, 759 F.3d at 1020. However, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *Smolen,* 80 F.3d at 1292; *Varney v. Sec'y of Health & Human Servs.,* 859 F.2d 1396, 1399 (9th Cir. 1988). More specifically, the district court should credit evidence that was rejected during the administrative process as true and remand for an immediate award of benefits when (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited as true. *Garrison*, 759 F.3d at 1020.

The credit-as-true rule applies in this case. The ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony with regard to extreme fatigue. At the hearing, the Vocational Expert testified that a person who is off task more than fifteen percent of the workday or has more than one absence per month is precluded from work. (R. at 88.) The Vocational Expert also testified that a person who needs to take four one-hour breaks per day is precluded from work. (R. at 88.) If Plaintiff's symptom testimony with regard to extreme fatigue is properly credited, no significant conflicts or ambiguities are left for the ALJ to resolve. Moreover, considering the record as a whole, including Plaintiff's testimony as to her extreme fatigue, which the Court must credit as a matter of law, the Court is left with no doubt that Plaintiff is disabled under the Act. *See Garrison*, 759 F.3d at 1022–23; *Lingenfelter*, 504 F.3d at 1040–41 & n.12; *Reddick v. Chater*, 157 F.3d 715, 729–30 (9th Cir. 1998) (concluding that, absent sufficient reasons from the ALJ to reject a claimant's pain and fatigue testimony, the matter shall be remanded for an award of benefits).

## IV. CONCLUSION

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court must reverse the SSA's decision denying Plaintiff's Application for Disability Insurance Benefits under the Act and remand for a calculation of benefits.

**IT IS THEREFORE ORDERED** reversing the September 4, 2019 decision of the Administrative Law Judge (R. at 16–29), as upheld by the Appeals Council on July 2, 2020 (R. at 1–6).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 4th day of April, 2022.

Honorable John J. Tuchi
United States District Judge